IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANTUM CORPORATION,<br><br>    Plaintiff and Counter-Defendant,<br><br>  v.<br><br>CROSSROADS SYSTEMS, INC.,<br><br>    Defendant and Counter-Plaintiff. | No. C 14-04293 WHA<br><br>**ORDER GRANTING QUANTUM'S MOTION TO AMEND INFRINGEMENT CONTENTIONS** |

## INTRODUCTION

In this patent infringement action involving data storage systems, the patent owner seeks leave to amend its infringement contentions. For the reasons stated below, the motion to amend is **GRANTED**.

## STATEMENT

Plaintiff and counter-defendant Quantum Corporation owns U.S. Patent No. 6,766,412 ("the '412 patent"), directed to data storage systems such as tape libraries. Quantum alleges that defendant and counter-plaintiff Crossroads Systems, Inc., manufactures and sells a series of infringing data storage products, known collectively as the StrongBox VSeries Library Solution.

The accused systems generally include a single network-attached storage appliance that is connected to an individual tape library. Another configuration — known as "replication" — is possible. In a replication configuration, two or more storage appliances, each connected to its own tape library, are inter-connected. The result is that the primary appliance can replicate data via the additional appliances, providing backups of data in multiple separate libraries.

In January 2014, Crossroads sent a letter to Quantum explaining that it did not believe its StrongBox systems could infringe the '412 patent because the asserted claims require a "plurality of data transfer device interfaces," while the StrongBox appliance is the "one and only" interface that communicates with tape libraries (LLagostera Decl., Exh. D).

Quantum served its initial infringement contentions in February 2015. Among its contentions, Quantum alleged that the claim term "logic circuitry for selectively routing data to one or more other data transfer devices" was met in the accused systems because that system could replicate data to an external location. Quantum cited Crossroads' product documentation that stated (*id.*, Exh. A at 25–26):

> Data protection is intrinsic and completely automated with StrongBox. Through user-configurable policies, StrongBox creates one or more copies of files to meet both onsite and offsite requirements . . . . [F]iles can be transferred via asynchronous replication between multiple StrongBox units for disaster recovery.

In March 2014, Quantum deposed Kenneth Hayden, Crossroads' director of engineering, who explained that StrongBox systems could be configured with a replication mechanism that included multiple inter-connected StrongBox appliances (Hayden Dep. at 223–25):

> Q. Okay. Disk connects to replicator. What is the replicator?
>
> A. It provides replication to send the file to another StrongBox.
>
> Q. And you say another StrongBox. Is that the other archive node?
>
> A. Yes.

Hayden then testified that Crossroads' university clients and some of its media clients, specifically including Lionsgate, use systems configured for replication. Hayden also identified Christopher Kehoe as the employee at Crossroads who would have been responsible for configuring customer systems (*id.* at 225–26). Quantum has not yet deposed Kehoe.

Also in March, Crossroads responded to an interrogatory regarding its non-infringement defense. Crossroads affirmed the position in its earlier letter to Quantum, namely that the StrongBox appliance was the "one and only interface" to a tape library, to the extent it is an interface at all, so it could not contain the claim limitation "plurality of data transfer device interfaces" (LLagostera Decl., Exh. E). In April 2015, Crossroads supplemented that

interrogatory response to explain its position that the advantage offered by the invention in the '412 patent was that each tape drive in the claimed invention was connected to its own interface with its own logic circuitry, which slowed the wear and tear on the interface hardware and provided for excess processing bandwidth (*id.*, Exh. F at 16).

The parties exchanged their preliminary claim construction positions in May 2015. Among the terms that Crossroads proposed to construe was "a plurality of data transfer device interfaces corresponding to a plurality of data transfer devices." Crossroads' proposed construction was "multiple data transfer device interfaces (DTDIs) that are *independent* from each other, each DTDI servicing one or more data transfer devices (*e.g.*, tape drives) dedicated to that DTDI" (Crossroads' Patent Local Rule 4-2 Disclosures, Exh. A) (emphasis added).

The parties exchanged their final proposed claim constructions on June 26, 2015. After Quantum received Crossroads' final proposed claim constructions, it began preparing amended infringement contentions, which it served on Crossroads on July 24 (Roberts Decl., Exhs. 2-D–2-M). Crossroads has stipulated to the amendment of all but two claim charts.

The two contested amendments, which the parties refer to as Exhibits J and K, pertain to the replication configuration. Those proposed amendments are expressly made contingent on the Court's adoption of Crossroads' claim construction position, namely, that the claim element "a plurality of data transfer device interfaces" is only met where there are multiple interfaces that are "independent" of each other in the sense that they have separate logic circuitry. Quantum disagrees with Crossroads' proffered construction, but it contends that Crossroads' products would still infringe claim 1 of the '412 patent when used in the replication configuration under even under Crossroads' construction.

Quantum moved to amend its infringement contentions on August 17. Crossroads opposes Quantum's proposed amendments pertaining to the replication configuration on the basis that Quantum was not diligent in pursuing the amendments and that undue prejudice would result. This order follows full briefing and oral argument.

3

**ANALYSIS**

A patent owner may amend its infringement contentions only for "good cause." Patent Local Rule 3-6. The patent local rules were adopted "in order to give claim charts more 'bite.' The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998) (Judge Fern M. Smith). The purpose of increased scrutiny for amending infringement contentions, in contrast to a liberal policy for amending pleadings, is to prevent the "'shifting sands' approach to claim construction." *Ibid.* That rule is not a "straitjacket into which litigants are locked from the moment their contentions are served." *Comcast Cable Communications Corp., LLC v. Finisar Corp.*, No. 06-04206, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007). Rather there must be some "balance between the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). The parties agree that good cause under the local rules is subject to a two-part inquiry, which considers whether: (i) the moving party has shown diligence in amending its contentions, and (ii) the non-moving party will not suffer undue prejudice. *Ibid.*

Crossroads has stipulated to Quantum's proposed amendments in Exhibits D–I and L–M included with the declaration of Clement S. Roberts in support of this motion, because those amendments do not appear to drastically alter Quantum's infringement theory. Those amendments are based on information that was revealed through discovery, such as new products, unbranded products, and alleged inducement. This order finds good cause exists as to those proposed amendments. The issue, then, is whether good cause exists to allow Quantum to amend its infringement contentions as reflected in Exhibits J and K, which are expressly contingent on a claim construction ruling in Crossroads' favor. This order finds it does.

**1. DILIGENCE.**

Quantum argues it has acted diligently by seeking leave to amend at an exceptionally early juncture, namely before any claim construction order has issued. Patent Local Rule 3-6(a) specifically identifies "[a] claim construction by the Court different from that proposed by the

4

party seeking amendment" among the circumstances that may support a finding of good cause, absent undue prejudice to the non-moving party.

No claim construction order has yet issued. In fact, Quantum proposed this amendment even before either side's final claim construction positions were due, and made this motion only a week after filing its opening claim construction brief. Although claim construction briefing has now concluded, the parties still have nearly a month before the close of fact discovery and before opening expert reports are due. The deadline to file a motion for summary judgment (wherein claim construction will also be decided) is not until November 12.

Quantum also notes that it began the process of amending its infringement contentions quickly after it learned of the details of the replication configuration through discovery. Crossroads argues that Quantum was first made aware of the replication at least as early as January 2015, when it cited documentation from Crossroads indicating that some files "can be transferred via asynchronous replication." That statement, in isolation, was insufficient to put Quantum on notice of the structure of the replication configuration such that Quantum could include an alternate theory of infringement based on it when it served its initial invalidity contentions.

Crossroads also argues that Quantum was put on notice of the replication configuration in March 2015 when Hayden discussed it in his deposition. Hayden himself offered a cursory description of the replication configuration, although he did note the configuration included the connection of two StrongBox appliances. He identified Kehoe as another employee at Crossroads who could speak to the technical specifications of the configuration, but Quantum has not yet sought to depose Kehoe. Hayden also identified Lionsgate as a client that utilized that configuration. Quantum followed up on the lead at Lionsgate, but was only able to conduct an inspection pursuant to a subpoena. That inspection did not occur until July. Quantum served its proposed amendments within three weeks of that inspection.

Finally, Crossroads argues that Quantum knew about the proposed construction that led to the instant motion when the parties exchanged preliminary claim construction positions in May. It is true that Crossroads' initial claim construction position put Quantum on notice of the

5

possibility that a "plurality of data transfer device interfaces" could be construed to require interfaces with independent logic circuitry, but Quantum had not yet had the opportunity to inspect a system configured with the replication configuration to directly observe whether that configuration could infringe under any construction. Moreover, those positions were not binding, and Quantum's efforts in investigating a new theory of liability on that basis could have proven wasteful.

Quantum also argues that it was led away from the theory reflected in its amended infringement contentions because Crossroads insisted that the StrongBox appliance was the "one and only" interface in the system, to the extent it is an interface at all, so the "plurality" claim limitation could not be met. The issue of whether each appliance in the replication configuration can constitute an independent interface goes to the merits of the case, and Quantum cannot blame Crossroads' advocacy for delaying its investigation into its alternate infringement theory. Nevertheless, it was not until Quantum was able to actually observe a replication system that it realized that configuration would include multiple StrongBox appliances, which, it argues, would constitute *multiple* interfaces.

Quantum served its proposed amendments within a month of when Crossroads' claim construction position was solidified and within three weeks of when Quantum was able to observe a system in the replication configuration, such that it could apply Crossroads' construction in context. It made these proposed amendment contingent on a claim construction ruling in Crossroads' favor. Quantum has shown diligence in pursuing this amendment, in particular by offering it on a contingency basis at this early stage, rather than waiting until after a claim construction ruling has issued.

### 2. PREJUDICE.

Crossroads argues it will be unfairly prejudiced if Quantum is allowed to amend its infringement contentions. This is because Quantum's amendments are not simply a shift in terminology or a slight change to its theory. That is, Quantum's new infringement theory identifies different components of the system as satisfying certain claim limitations, but only if Crossroads' proposed constructions are adopted. For example, Quantum's amendment shifts the

6

limitation "host computing environment" from the client's system to the first StrongBox appliance in a replication configuration. Similarly, Quantum now maintains that the entire StrongBox appliance may be a "data transfer device interface," within the meaning of the claims, while under its initial theory, the interface between the appliance and each individual tape in a tape library was the "data transfer device interface."

Crossroads contends that it will need an opportunity to conduct an additional prior art search, since Quantum now contends the claim terms can embrace a broader set of components. At oral argument, however, Crossroads admitted that because Quantum's amendments are based on Crossroads' own claim construction, it would not affect its invalidity theory. Crossroads also has not sought to amend its infringement contentions. Moreover, Crossroads still has nearly a month before its opening expert report on invalidity is due, which is more than enough time to incorporate additional arguments.

Crossroads also contends that Quantum's amendment will require new claim construction theories. Again, Crossroads has not sought leave to amend its claim construction positions, and it has almost two months before any claim construction hearing would occur.

Quantum has acted diligently by bringing this motion before claim construction has occurred, before discovery has closed, and within only a few weeks of being able to directly observe the replication configuration. Crossroads has been on notice of this amendment since July and has not sought any amendments of its own. Crossroads has failed to show that it would be unfairly prejudiced by such a motion.

## CONCLUSION

For the reasons stated above, Quantum's motion to amend its infringement contentions is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 29, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7